UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

SBLA Inc.                                                    Case No. 25-12606

     Debtor.                                          Chapter 11 Subchapter V

_____/

### _EMERGENCY_ MOTION TO AUTHORIZE USE OF CASH COLLATERAL

### **Expedited Hearing Requested**

### Basis for Expedited Relief

**The Debtor needs use of cash collateral in order for the Debtor to continue to operate, preserve the value of the Debtor's business as a going concern, and generate a return for creditors. Accordingly, the Debtor will suffer immediate and irreparable harm if it is not authorized to use cash collateral to operate its business. The Debtor respectfully requests that this motion be set for hearing on March 13, 2025.**

SBLA, Inc. (the "Debtor"), pursuant to 11 U.S.C. §§ 105(a) and 363, respectfully requests that the Court enter an order authorizing the Debtor to use cash collateral effective as of the Petition Date. In support, the Debtor states as follows:

### RULE 4001(b)(1)(B) CONCISE STATEMENT SUMMARIZING RELIEF

- **Name of Each Entity with a Cash Collateral Interest:** The following creditors _may_ have an interest in the Debtor's cash collateral: 8Fig, Inc.; Libertas Funding, LLC; Fox Funding Group, LLC; Pinnacle Business Funding LLC; Rocket Capital NY LLC; Spring Funding; Capytal.com; SellersFi; Corporation Service Company, as Representative; C T Corporation System, as Representative; Middesk, Inc. as Representative; and CHTD Company.

- **Purpose for the Use of Cash Collateral:** To operate the Debtor's business.

- **Material Terms:** The Debtor requests interim use of cash collateral subject to the attached budget for a period of twenty-one days from the entry of an interim order, and further requests that the Court schedule a further hearing, which may be a final hearing, on the Debtor's use of cash collateral.

- **Adequate Protection**: All creditors which may claim an interest in cash collateral are

adequately protected by virtue of the fact that the Debtor will be operating on a cash flow positive basis, and additional adequate protection is proposed in the form of replacement liens.

1.      On March 11, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

2.      The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to 11 U.S.C. §§1182(2) and 1184.

3.      The Debtor is a Delaware corporation with its principal place of business located at 1711 Huntington Park Way, Boca Raton, FL 33496; however, the Debtor's employees all work remotely. The Debtor manufactures and sells beauty and anti-aging products. The Debtor filed as a result of its unsustainable reliance on MCA financing. It initially sought what it believed to be short-term financing from 8Fig, Inc. Unfortunately, the debt service to 8Fig became untenable, and the Debtor had to take out additional loans from new MCA lenders in order to service the prior lenders. It is important to note, the subsequent MCA lenders reached out to the Debtor on an unsolicited basis, as if they knew that once a borrower receives an MCA loan, the borrower will need additional ones in the very near future. As a result of this disadvantageous financing and ensuing demands and lawsuits, the Debtor sought bankruptcy protection. The Debtor filed this bankruptcy to reorganize its business.

4.      The Debtor has 12 potentially secured creditors (together, the "Secured Creditors") who may assert a security interest in the Debtor's cash collateral:  8Fig, Inc. ("8Fig"); Libertas Funding, LLC ("Libertas"); Fox Funding Group, LLC ("Fox"); Pinnacle Business Funding LLC ("Pinnacle"); Rocket Capital NY LLC ("Rocket Capital"); Spring Funding ("Spring Funding"); Capytal.com ("Captyal"); SellersFi; Corporation Service Company, as Representative ("CSC"); C

T Corporation System, as Representative ("CT"); Middesk, Inc. as Representative ("Middesk"); and CHTD Company ("CHTD"). The Debtor is not a party to any agreements with CSC, CT, Middesk, or CHTD and believes each has filed a UCC-1 solely in a representative capacity. All of the other Secured Creditors other than SellersFi are merchant cash advance lenders.

5.    The following chart summarizes the UCC filings relating to the Debtor in Delaware and Florida:

| Entity | State | File Date | Parties | Related Filings |
|---|---|---|---|---|
| SBLA, INC. | DE | 8/3/2021 | CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | |
| SBLA, INC. | DE | 12/9/2021 | CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | |
| SBLA, INC. | DE | 7/4/2022 | CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | |
| SBLA, INC. | DE | 4/21/2023 | CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | |
| SBLA, INC. | DE | 9/20/2023 | CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | |
| SBLA, INC. | DE | 2/23/2024 | MIDDESK, INC. AS REPRESENTATIVE | TERMINATION 03/11/2024 |
| SBLA, INC. | DE | 5/9/2024 | 8FIG, INC. | AMENDMENT 01/08/2025 AMENDMENT 01/08/2025 AMENDMENT 01/08/2025 AMENDMENT 01/08/2025 AMENDMENT 01/08/2025 AMENDMENT 01/08/2025 |
| SBLA, INC. | DE | 5/10/2024 | MIDDESK, INC. AS REPRESENTATIVE | TERMINATION 12/18/2024 |
| SBLA, INC. | DE | 6/28/2024 | C T CORPORATION SYSTEM, AS REPRESENTATIVE | |
| SBLA, INC. | DE | 9/17/2024 | C T CORPORATION SYSTEM, AS REPRESENTATIVE | |
| SBLA, INC. | DE | 9/24/2024 | MIDDESK, INC. AS REPRESENTATIVE | |
| SBLA, INC. | DE | 9/30/2024 | CHTD COMPANY | |
| SBLA, INC. | DE | 12/11/2024 | C T CORPORATION SYSTEM, AS REPRESENTATIVE | |

| | | | | |
|---|---|---|---|---|
| SBLA, INC. | FL | 9/17/2024 | C T CORPORATION SYSTEM, AS REPRESENTATIVE | |
| SBLA, INC. | FL | 11/19/2024 | CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | |
| SBLA, INC. | FL | 12/11/2024 | C T CORPORATION SYSTEM, AS REPRESENTATIVE | |

6.    The Debtor has no cash on hand. Amazon, Shopify, and Paypal collect funds from the Debtor's customers and, normally, remit those funds to the Debtor. Amazon, Shopify, and Paypal all received UCC 9-406 letters prepetition and are currently refusing to remit funds to the Debtor. The Debtor has no visibility as to the balance of any funds held by those vendors.

7.    Attached hereto as **Exhibit A** is a budget (the "Budget") encompassing the Debtor's expected income and expenses.  As set forth in the Budget, the Debtor expects to operate on a cash flow positive basis.

8.    The Debtor requires the use of cash collateral to fund the necessary operating expenses of its business.  As set forth below, the Debtor requests that the Court approve its use of cash collateral, effective as of the Petition Date, pursuant to the terms of the Budget, and further authorize the Debtor to (a) exceed any line item on the Budget by an amount equal to ten (10%) percent of each such line item; or (b) to exceed any line item by more than ten (10%) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10%) percent in the aggregate of the total Budget.

9.    Prior to the Petition Date, merchant cash advance (MCA) lenders had sent notices to the Debtor's account debtors pursuant to UCC § 9-406.

## ARGUMENT

## Cash Collateral

10.     The Debtor's use of property of its estate is governed by Code section 363, which provides in pertinent part that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).  A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with § 363.  *See* 11 U.S.C. § 1107(a).

11.     When a chapter 11 debtor in possession is authorized to operate its business, it may use property of estate in the ordinary course of business, but is prohibited from using cash collateral absent consent of the secured creditor or court authorization. 11 U.S.C. § 363(c).  The Code defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest . . ." 11 U.S.C. § 363(a).

12.     It is appropriate for the Court to authorize the Debtor to use cash collateral because (a) all creditors with a potential interest in the Debtor's cash collateral are being adequately protected and (b) such use will preserve the going concern value of the estate.

**A.     Potential Secured Creditors Are Adequately Protected.**

17.     The Bankruptcy Code does not define "adequate protection" but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in its collateral.  *See* 11 U.S.C. § 361; *see In re Potvin Lumber Company, Inc.*, 24 B.R. 54 (Bankr. D.

Vt. 1982) (ordering that the debtor could use cash collateral and finding that the bank was adequately protected because the total value of the debtor's personal property exceeded the bank's indebtedness).

18.    Adequate protection is to be determined on a case-by-case factual analysis. *See Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *see also* S. Rep. No. 95-989, 95th Cong., 2d Sess. 54 (1978).  For example, *O'Connor* states that "[i]n order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard."  808 F.2d at 1396. (citations omitted).

19.    Adequate protection is meant to ensure that a secured creditor receives the value for which it originally bargained pre-bankruptcy. *Swedeland Dev. Group., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (citation omitted).  The essence of adequate protection is to ensure the maintenance and continued responsibility of lien values during the interim between filing and confirmation in a case.  *In re Arriens*, 25 B.R. 79, 81 (Bankr. D. Or. 1982).

20.    The Secured Creditors are potentially secured creditors with an interest in the Debtor's cash collateral.  The adequate protection provided to the Secured Creditors includes (a) the Debtor's positive cash flow position and (b) replacement liens against the property of the Debtor for any use of cash collateral, with such liens having the same seniority and entitled to the same level of priority as the priority of such creditors' perfected liens—if any—against the Debtor's property that existed prior to the Petition Date.

21.    The Debtor's requested use of cash collateral and the protections afforded to parties with a potential interest in cash collateral herein are reasonable, appropriate, and sufficient to

satisfy the legal standard of "adequate protection" and will serve to maintain the value of alleged collateral.

      **B.**      **Cash Collateral Use Will Preserve the Debtor's Going Concern Value.**

      22.      The continued operation of the Debtor's business will preserve its going concern value, enable the Debtor to capitalize on that value through a reorganization strategy, and ultimately facilitate the Debtor's ability to confirm a plan.  However, if the Debtor is not allowed to use cash collateral, especially through the regular collection of its accounts receivable, it will be unable to operate.

      23.      It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern:

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its efforts to rebuild.  Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

*In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984); *see In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (debtor permitted to use cash collateral when creditor was undersecured because such use was necessary to its continued operations and the creditor's secured position can only be enhanced by the continued operation of the debtor's business).

      24.      If the Debtor cannot use cash collateral, it will be forced to cease operations.  By contrast, permitting cash collateral use will allow the Debtor to maintain operations and preserve the going concern value of its business which will inure to the benefit of all creditors.

      **C.**      **Payment of Debtor's Accounts Receivable**

      25.      The Debtor's use of its cash collateral requires the Debtor to receive payments on

the Debtor's accounts receivable. However, MCA lenders have issued notices under UCC § 9-406 directing the Debtor's account debtors to remit payments to the Debtor's lenders rather than the Debtor. The Court's authorization to use cash collateral would become meaningless if the Debtor does not receive payment on its accounts receivable. Accordingly, the Debtor requests the Court order the Debtor's account debtors, or other entities holding the Debtor's funds, to make payments to the Debtor.

26.    A proposed order granting this Motion on an interim basis is attached hereto as **Exhibit B**.

**WHEREFORE**, the Debtor requests that this Court enter an order, substantially in the form of the order attached as **Exhibit B**: (a) authorizing, retroactive to the Petition Date, the Debtor's use of cash collateral in accordance with the Budget and the terms set forth herein for a period of at least twenty-one days from the date the Court grants the Motion; (b) granting the replacement liens set forth above in connection with the Debtor's use of cash collateral; (c) directing the Debtor's account debtors or other entities holding the Debtor's funds to remit payments to the Debtor; (d) scheduling a further hearing; and (e) granting the Debtor such other and further relief as is just and proper.

Respectfully submitted,

**SHRAIBERG PAGE P.A.**
Proposed Attorneys for the Debtor
2385 NW Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bss@slp.law
Email: shess@slp.law

By: _/s/ Bradley S. Shraiberg_
     Bradley S. Shraiberg
     Florida Bar No. 121622
     Samuel W. Hess
     Florida Bar No. 1044184

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service on March 11, 2025.

_/s/ Bradley S. Shraiberg_